JERRY E. SMITH, Circuit Judge:
 

 This case is part of the recent resurgence of litigation by purported heirs to portions of the famed Spindletop Oil Field, one of Texas’s most significant oil discoveries. Plaintiffs filed this $20 billion lawsuit against numerous oil companies, alleging that the companies impermissibly extracted oil and gas from lands in which the plaintiffs owned a one-eighth mineral interest. The district court entered summary judgment for the defendants. Finding no error, we affirm.
 

 
 *903
 
 I.
 

 Jewell Robbins alleges that she, individually and as attorney-in-fact for some 200 heirs of James Meaders, owns an undivided one-eighth mineral interest in certain lands located in Jefferson County, Texas, by virtue of a deed from Ephraim Garonzik to James Meaders. That deed, dated December 14, 1911 (the “1911 Deed”), specifically conveys an undivided interest in four tracts of land, each of which lies somewhere between three and sixteen miles from the famed Spindletop Dome. Relying upon additional language in the 1911 Deed, Robbins contends that James Meaders owned a one-eighth mineral interest not only in the four referenced parcels of property, but also in thirty-seven additional tracts, including those on which the Spindletop Dome is located.
 

 Robbins filed this suit against various oil companies,
 
 [1]
 
 claiming that they had extracted oil, gas, and other minerals from the lands described in the 1911 Deed without compensating Meaders or his heirs. The trial court initially dismissed the suit under theories of presumed lost deed and laches. This court determined on appeal that dismissal was improper and remanded for consideration on the merits.
 
 Robbins v. Amoco Prod. Co.,
 
 800 F.2d 1143 (5th Cir.1986) (per curiam) (unpublished).
 

 On remand, the district court entered summary judgment for the oil companies on various grounds. The court held that Robbins’s claims against Texaco were discharged in bankruptcy. With respect to the remaining defendants, the court concluded that the 1911 Deed conveyed only the four specifically referenced tracts of property and that none of the oil companies, except Sun Exploration and Production Company (“Sun E
 
 &
 
 P”) and Chevron, ever had possessed an interest in those tracts. Sun E & P conceded that previously it had owned an oil and gas lease in one of the tracts referenced in the 1911 Deed. Because that interest was released in 1963, however, the court determined that Robbins’s claim against Sun E & P was barred by applicable statutes of limitation. The district court concluded, alternatively, that Robbins failed to prove a complete chain of title to three of the four tracts of land.
 

 The district court’s rulings disposed of all of Robbins’s claims except those against Chevron with respect to one tract of land.
 
 [2]
 
 Accordingly, the court severed the outstanding claims against Chevron pursuant to Fed.R.Civ.P. 21
 
 [3]
 
 and entered judgment for the oil companies on the remaining claims.
 

 II.
 

 We first consider the district court’s interpretation of the 1911 Deed, which sets forth specific descriptions of four tracts of land, designated as Abstract Nos. 166, 181, 182, and 183. The deed then contains the following language:
 

 [T]he above described property herein conveyed is all the property that ... J.H. McFadden, R.D. McFadden, and A.J. McFadden inherited through their ances-ter [sic], Wm. McFadden, and this deed is intended to convey to the said James Meaders one-eights [sic] interest in and to all properties ... that the said J.H. McFadden, A.J. McFadden, and R.D. McFadden are entitled to by inheritance through their ancestor, the said Wm. McFadden, of every description whatsoever, situated in the said County of Jefferson.
 

 
 *904
 
 Because the McFaddens
 
 [4]
 
 allegedly owned more than forty different parcels of property in Jefferson County at the time of this conveyance, Robbins asserts that this language must be construed to convey not just the four specifically described tracts, but all of the tracts owned by the McFad-dens in Jefferson County. We disagree.
 

 Although Robbins offers a veritable barrage of arguments in support of her position, her interpretation of the 1911 Deed is foreclosed by our recent decision in
 
 Clark v. Amoco Prod. Co.,
 
 908 F.2d 29 (5th Cir.1990). The plaintiffs in
 
 Clark
 
 claimed that the deed involved in this case was intended to convey a one-eighth interest in all of William McFadden’s property in Jefferson County. The district court rejected that argument and granted summary judgment in favor of the defendants, reasoning that the 1911 Deed unambiguously conveyed an interest only in the four referenced tracts. On appeal, the Clark plaintiffs argued that the deed was ambiguous and, therefore, extrinsic evidence should have been admitted to determine the scope of the conveyance. We rejected this contention, holding that “the plain language of the 1911 Deed” and “controlling Texas precedent” established that the Meaders estate “at most [was] entitled to a one-eighth interest in the four specifically described tracts.”
 
 Id.
 
 at 33.
 

 In view of the construction of the 1911 Deed in
 
 Clark,
 
 Robbins’s attempt to expand the deed beyond the four referenced tracts must fail.
 
 Clark
 
 held that the 1911 Deed was not ambiguous and thus refused to consider extrinsic evidence. As such, the court necessarily based its interpretation of the deed upon the contractual language. Because the interpretation of the unambiguous terms of a contract is purely a question of law,
 
 Browning v. Navarro,
 
 743 F.2d 1069, 1080 (5th Cir.1984),
 
 stare decisis
 
 dictates that the decision in
 
 Clark
 
 must govern this case. As one court observed,
 

 [When a court of last resort] has once given a definitive effect to a specific writing or a particular fact situation — as when it determines the true construction of a will or the validity of a deed— ... such determination is binding and conclusive in all subsequent suits involving the same subject matter, whether the parties and the property are the same or not. This result is reached by virtue of stare decisis....
 

 Case-Pomeroy Oil Co. v. Pure Oil Co.,
 
 279 S.W.2d 886, 888 (Tex.Civ.App.—Waco 1955, writ ref’d n.r.e.).
 

 This case, of course, involves more than adherence to a rule of law; it entails the enforcement of a decision construing the same title instrument. As such, any decision to reinterpret the 1911 Deed in this case would require us not just to distinguish
 
 Clark,
 
 but to overrule it. Without a clearly contrary opinion of the Supreme Court or of this court sitting
 
 en banc,
 
 however, we owe strict obedience to circuit precedent.
 
 See, e.g., Samaad v. City of Dallas,
 
 922 F.2d 216, 219 (5th Cir.1991);
 
 In re Fox,
 
 902 F.2d 411, 413 (5th Cir.1990). Absent subsequent disapproval by the state courts, this rule applies with equal force to cases such as
 
 Clark
 
 in which state law supplies the substantive rule of decision.
 
 Broussard v. Southern Pac. Transp. Co.,
 
 665 F.2d 1387, 1389 (5th Cir.1982). Nor do we have reason to conclude that the
 
 Clark
 
 decision is in error.
 

 Robbins insists, however, that the
 
 Clark
 
 decision was a result of poor lawyering by the parties. She argues that
 
 Clark
 
 is not controlling because the record in this case contains documents that the
 
 Clark
 
 court lacked, which permit a better understanding of the parties’ intent in drafting the 1911 Deed. This argument ignores the fact that the
 
 Clark
 
 court did not rely upon extrinsic evidence as an aid to interpreting the deed. In fact, in construing the deed, the court held that extrinsic evidence could not even be considered:
 

 While it is true that parol evidence may be admitted to resolve ambiguities in a
 
 *905
 
 deed or to ascertain the meaning of a general description, the deed in this case becomes ambiguous only when extrinsic evidence is introduced to show, contrary to the express terms of the deed, that the McFadden estate contained more than the four parcels of land. Such use of extrinsic evidence is impermissible under Texas law, which holds that “parol evidence will not be received to create an ambiguity or to give the contract a meaning different from that which its language imparts.”
 
 Stahl Petroleum Co. v. Phillips Petroleum Co.,
 
 550 S.W.2d 360, 368 (Tex.Civ.App.—Amarillo 1977),
 
 aff'd,
 
 569 S.W.2d 480 (1978).
 

 908 F.2d at 32 (footnotes omitted). Robbins does not, nor could she, explain how the quantity or quality of extrinsic evidence offered in this case alters the prohibition against considering such evidence when a contract is otherwise unambiguous. The fact that
 
 more
 
 extrinsic evidence was offered in this case than in
 
 Clark
 
 simply is irrelevant.
 

 Robbins has offered no valid reason why
 
 Clark
 
 should not govern this case. Accordingly, we conclude on the basis of that decision that the 1911 Deed conveyed, at most, an interest in the four parcels of land specifically described in the deed.
 
 See id.
 
 at 31.
 

 III.
 

 Having established which property the 1911 Deed could have conveyed — namely, Abstract Nos. 166, 181, 182, and 183— we now determine whether Robbins established a sufficient chain of title to that property. Texas law requires a plaintiff claiming title to real property to make an affirmative showing of superior title in himself in one of three ways: (1) proof of adverse possession; (2) proof of a regular chain of conveyances out of the sovereign; or (3) proof that he holds a superior title from a common source.
 
 See Hunt v. Heaton,
 
 643 S.W.2d 677, 679 (Tex.1982);
 
 Land v. Turner,
 
 377 S.W.2d 181, 183 (Tex.1964);
 
 Gillum v. Temple,
 
 546 S.W.2d 361, 363 (Tex.Civ.App.—Corpus Christi 1976, writ ref’d n.r.e.). Because Robbins never has asserted possession of the property in dispute, she cannot demonstrate chain of title by virtue of adverse possession. Therefore, she must show a superior title out of a common source or prove a regular chain of conveyances out of the sovereign.
 
 Land,
 
 377 S.W.2d at 183.
 

 When Robbins filed her complaint, she produced a deed from the State of Texas to William McFadden, a deed from Anthony Lucas to Ephraim Garonzic, and a deed from Garonzic to James Meaders. Robbins failed, however, to produce a deed from McFadden to Lucas. Accordingly, the oil companies moved for summary judgment. In opposition, Robbins produced a document from 1898 (the “1898 Agreement”) that purports to be an agreement between the executors of William McFadden’s estate to convey certain properties to Anthony Lucas. Robbins asserts that this agreement provides the missing link in the chain of title sufficient to avoid summary judgment. We disagree.
 

 The 1898 Agreement does not identify any specific tracts of property being conveyed. Instead, it purports to convey an interest in the “tracts and parcels of land of every description thereof
 
 in reference to Wm. McFaddin estate”
 
 (emphasis added). The scope of the 1898 Agreement therefore must be determined by reference to the property contained in McFadden’s estate.
 

 The record contains a certified copy of an inventory that purports to list all of the personal and real property owned by McFadden at his death. The inventory shows interests in more than two dozen tracts of land.
 
 [5]
 
 The 1911 Deed lists conveyances of four tracts — Abstract Nos. 166, 181, 182, and 183. Of these four tracts, McFadden’s inventory lists only Abstract No. 166. As a result, the 1898 Agreement does not supply a chain of title to Abstract No. 181, 182, or 183.
 

 
 *906
 
 Robbins has presented what she claims is the entire chain of title to the tracts described in the 1911 Deed. She has failed, however, to establish an unbroken chain of title to three of the four tracts. Accordingly, the district court properly granted summary judgment in favor of the defendants on Robbins’s claims with respect to those three tracts.
 
 See Brown v. Donald,
 
 216 S.W.2d 679, 682-83 (Tex.Civ.App.—Fort Worth 1949, no writ) (break in a plaintiffs chain of title is fatal to claim of ownership);
 
 Jackson v. Cato,
 
 156 S.W.2d 302 (Tex.Civ.App.—Amarillo 1941, writ ref’d n.r.e.) (missing link in chain of title held to defeat plaintiffs case).
 

 IV.
 

 A.
 

 We agree with the district court that Robbins was not entitled to royalties on minerals produced from Abstract No. 181,182, or 183, as she failed to establish a chain of title to those tracts. However, assuming
 
 arguendo
 
 that Robbins could establish chain of title, there is no evidence that any of the defendants, except Chevron and Sun E & P, ever extracted oil and gas from any of the four tracts described in the 1911 Deed.
 

 With the exception of Chevron, each of the oil companies supplied affidavits to the effect that it searched its records and found nothing to indicate that it had produced, or participated in the production of, any minerals from any of the four described tracts. Moreover, each company averred in affidavits that its policy was to record land instruments if the instrument is generally filed of record by the business or legal community.
 

 Accordingly, the corporate secretary of each of the defendants assembled a list of all subsidiary or affiliated companies that might have conducted mineral production or drilling in Texas on behalf of the defendants. These names were then provided to an abstractor, who searched the deed records of Jefferson County for any leasehold or ownership interests that those companies might have had in Abstract Nos. 166, 181, 182, and 183. Other than a lease by Sun E & P on Abstract No. 182, the abstractor found no such recorded interests. Because Robbins introduced no evidence to contradict these matters, the trial court was fully justified in rendering summary judgment for the oil companies based upon this evidence.
 

 B.
 

 Summary judgment for Sun E & P was also proper. Sun E & P conducted a search similar to that of the other oil companies and found that it never had participated in any oil, gas, or other mineral-producing activities on three of the four tracts. Sun E & P’s records did reflect that it had leased lands in 1944 that included Abstract No. 182. Its records reflected, though, that neither it nor any of its assignees ever had drilled a well on Abstract 182. Moreover, Sun E & P released its rights to the property in 1963, twenty-two years before Robbins filed this action.
 

 A party who seeks to recover damages for the extraction of minerals from his land may either ratify an existing lease and sue for royalties or regard the lease as invalid and sue for conversion.
 
 Hamman v. Ritchie,
 
 547 S.W.2d 698, 706-07 (Tex.Civ.App.—Fort Worth 1977, writ ref’d n.r.e.) (citing
 
 Cox v. Davison,
 
 397 S.W.2d 200 (Tex.1965));
 
 Texas Co. v. Marlin,
 
 109 F.2d 305, 310 (5th Cir.1940) (applying Texas law). The statute of limitations is four years in the former instance and two years in the latter. Tex.Civ.Prac. & Rem.Code Ann. §§ 16.003, 16.004 (Vernon 1986);
 
 Humble Oil & Refining Co. v. Fantham,
 
 268 S.W.2d 239, 244 (Tex.Civ.App.—Galveston 1954, writ dism’d). Irrespective of which theory Robbins pursues, it is obvious that her claims against Sun E & P are barred by limitations. Accordingly, summary judgment additionally was proper with respect to the four tracts, including Abstract No. 182, for the defendants who proved they did not produce oil and gas from those tracts or as to which
 
 *907
 
 limitations had run.
 
 [6]
 

 V.
 

 Robbins next contends that summary judgment was inappropriate because the district court did not allow adequate discovery. This claim is without merit.
 

 To preserve a complaint of inadequate opportunity to conduct discovery, the party opposing a motion for summary judgment must file a motion and non-evidentia-ry affidavits pursuant to Fed.R.Civ.P. 56(f), explaining why it cannot oppose the summary judgment motion on the merits.
 
 See Washington v. Allstate Ins. Co.,
 
 901 F.2d 1281, 1285 (5th Cir.1990);
 
 Union City Barge Line v. Union Carbide Corp.,
 
 823 F.2d 129, 136 (5th Cir.1987). Because Robbins never filed any such motion, she is entitled to reversal only upon a showing of prejudice to “substantial rights.”
 
 Fontenot v. Upjohn Co.,
 
 780 F.2d 1190, 1194 (5th Cir.1986).
 
 See also
 
 Fed.R.Civ.P. 61. As Robbins has made no attempt to show such prejudice, her claim must be rejected.
 
 Washington,
 
 901 F.2d at 1285;
 
 Fontenot,
 
 780 F.2d at 1194.
 

 Assuming
 
 arguendo
 
 that Robbins’s request for additional discovery could be construed as a rule 56(f) motion, the district court would have been justified in denying it. To obtain to the shelter of rule 56(f), the party resisting summary judgment must present specific facts explaining the inability to make a substantive response as required by rule 56(e) and must specifically demonstrate how discovery will enable him to establish the existence of a genuine issue of material fact.
 
 See Solo Serve Corp. v. Westowne Assocs.,
 
 929 F.2d 160, 167 (5th Cir.1991);
 
 Securities & Exch. Comm’n v. Spence & Green Chem. Co.,
 
 612 F.2d 896, 901 (5th Cir.1980),
 
 cert. denied,
 
 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981).
 

 Robbins’s request to conduct formal discovery contains only the vague assertion that additional discovery is needed in order adequately to oppose the oil companies’ summary judgment motion. Robbins never has suggested, either here or in the district court, how formal discovery reasonably could be expected to offer an escape from the legal deficiencies that the defendants asserted in their summary judgment motions. Because rule 56(f) cannot be relied upon to defeat a summary judgment motion “ ‘where the result of a continuance to obtain further information would be wholly speculative,’ ”
 
 Paul Kadair, Inc. v. Sony Corp.,
 
 694 F.2d 1017, 1029 (5th Cir.1983) (quoting
 
 Contemporary Mission, Inc. v. United States Postal Serv.,
 
 648 F.2d 97, 107 (2d Cir.1981)), the district court’s refusal to grant Robbins’s request for additional discovery was not an abuse of discretion.
 
 See Washington,
 
 901 F.2d at 1286 (denial of rule 56(f) motion is reviewed under an abuse of discretion standard);
 
 Fontenot,
 
 780 F.2d at 1194 (same).
 

 VI.
 

 Having disposed of Robbins’s claims against Amoco, Phillips, Mobil, Sun, Sun E & P, Chevron, and Shell, we now consider the propriety of the district court’s entry of summary judgment for Texaco. On April 12, 1987, Texaco filed for protection under Chapter 11 of the Bankruptcy Code. Texaco emerged from bankruptcy on April 7, 1988, following the confirmation of its plan of reorganization. The district court in the instant case concluded that by virtue of this confirmation order, Texaco was entitled to summary judgment on the ground that Robbins’s claims were discharged in
 
 *908
 
 bankruptcy. Robbins asserts that her claim against Texaco is not discharged because she never had notice of the bankruptcy proceeding and therefore was unaware of the necessity of filing a proof of claim. The record reflects otherwise.
 

 Robbins asserts that “Texaco’s counsel mailed notice to the former attorney of record for Appellant and not to the attorney of record for Appellant.” The record indicates, however, that Robbins’s first counsel of record withdrew in January 1987 and that Joseph Connor filed his initial appearance at that time. Connor remained as Robbins’s counsel through January 1988, when Thomas Roebuck filed his entry of appearance as Robbins's attorney. Texaco’s notice of bankruptcy, which advised of the bar date and procedures for filing proofs of claim, was mailed to Con-nor on April 14, 1987, while he was still Robbins’s attorney of record.
 

 Connor acknowledged receipt of this notice in a letter to the magistrate dated June 18, 1987. Because Robbins failed to rebut this evidence with any formal response or countervailing affidavits, despite being granted two extensions of time to do so, the district court properly concluded that her complaint of lack of actual notice was without factual support in the record.
 

 In any event, Robbins was put on inquiry notice of the bankruptcy filing by virtue of a letter dated June 5, 1987, from the magistrate, that informed “AH Counsel of Record” well in advance of the bar date for filing proofs of claim of Texaco’s bankruptcy. As the Ninth Circuit observed,
 

 When the holder of a large, unsecured claim ... receives any notice ... that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. “Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it.”
 

 Lawrence Tractor Co. v. Gregory (In re Gregory),
 
 705 F.2d 1118, 1123 (9th Cir.1983) (citation omitted). The letter from the magistrate obviously was sufficient to “excite [Robbins’s] attention” and put her on guard to inquire about any actions necessary to avoid discharge of her claims against Texaco.
 

 Robbins had both actual and inquiry notice of the bankruptcy proceedings, yet she failed to take any action to avoid discharge of her claims. Accordingly, summary judgment was properly rendered for Texaco.
 

 VII.
 

 Robbins’s claims are wholly without merit. Consequently, the judgment of the district court is AFFIRMED.
 

 [1]
 

 .Except where it is necessary to distinguish them, the defendant corporations — Amoco Production Company, Mobil Oil Corporation, Phillips Petroleum Company, Sun Company, Sun Exploration and Production Company (now known as Oryx Energy Company), Chevron Company U.S.A. (formerly Gulf Oil Corporation), Shell Oil Company, and Texaco Inc. — are referred to collectively as the “oil companies.”
 

 [2]
 

 . The district court granted summary judgment for Chevron; we affirmed.
 
 Robbins v. Chevron USA,
 
 940 F.2d 1529 (5th Cir.1991) (unpublished).
 

 [3]
 

 . Although this appeal was taken without a Fed. R.Civ.P. 54(b) certification, the district court’s rule 21 severance is sufficient to establish finality for purposes of appellate jurisdiction.
 
 See United States v. O'Neil,
 
 709 F.2d 361, 369 (5th Cir.1983).
 

 [4]
 

 . Among the various spellings of "McFadden," including "McFaddin," we employ the spelling that corresponds to the 1911 Deed.
 

 [5]
 

 . The inventory lists interests in Abstract Nos. 13, 15, 17, 18, 20, 32, 34, 52, 56, 89, 125, 158, 166, 169, 177, 179, 194, 205, 257, 385, and 397 in Jefferson County and several lots in the City of Beaumont.
 

 [6]
 

 .
 
 Robbins asserts in her reply brief that limitations does not bar recovery because the oil companies owed her certain confidential and fiduciary duties, which they breached. The claimed existence of a fiduciary relationship is based solely upon the allegation that the oil companies were co-tenants of the heirs of James Meaders. Under Texas law, however, co-tenants do not owe fiduciary obligations to one another absent an agreement to the contrary.
 
 See Don-nan v. Atlantic Richfield,
 
 732 S.W.2d 715, 717 (Tex.App.—Corpus Christi 1987, writ denied);
 
 Hamman v. Ritchie,
 
 547 S.W.2d 698, 706-07 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.);
 
 Zimmerman v. Texaco, Inc.,
 
 409 S.W.2d 607, 617 (Tex.Civ.App.—El Paso 1966, writ ref'd n.r.e.). Because Robbins has failed to prove the existence of any such agreement, we reject the claim that the oil companies were her fiduciaries.