David Lynn MEADOR, Plaintiff,

v.

ORYX ENERGY CO., Defendant.

No. 1:99CV667.

United States District Court,
E.D. Texas,
Beaumont Division.

March 8, 2000.

Michael J. Mazzone, Dow Cogburn & Friedman, Houston, TX, for defendant.

David L. Meador, GRCC, Central City, KY, plaintiff pro se.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

SCHELL, Chief Judge.

Before the court is "Defendant's Motion to Dismiss and Subject Thereto, Original Answer" (Dkt.# 5), filed November 18, 1999. Plaintiff's "Motion to Strike Defendant's Motion to Dismiss" (Dkt.# 7) was filed November 26, 1999. After consideration of the motion, response and applicable law, the court is of the opinion that the motion to dismiss should be GRANTED.

### I. Introduction

This suit was filed in violation of an order signed by U.S. District Judge Howell Cobb on November 18, 1991, which enjoined the Clerk of the United States District Court for the Eastern District of Texas "from accepting for filing any lawsuit by any party claiming through James Meaders, under any spelling of that name, and involving the Deed from Ephraim Garonzik to James Meaders dated December 14, 1911, or any of the predecessor instruments in that chain of title, unless there is first a motion for leave to file granted by a sitting judge in this District." *Meadows v. Chevron, U.S.A., Inc.,* No. 1:90–CV–676, Order Enjoining the Filing of Actions Based on the 1911 Deed to James Meaders, signed November 18, 1991, at 1–2, on file with the U.S. District Clerk for the Eastern District of Texas, Beaumont Division. The instant suit is clearly within the scope of that injunction, and the court could dismiss it for Plaintiff's failure to obtain the requisite leave of court before filing. However, to avoid the exercise of considering the motion for leave to file suit that would inevitably follow a dismissal based on the injunction, the court has determined that it should dispose of this case on the merits.

Plaintiff David L. Meador alleges that Defendant Oryx committed the act of conversion of minerals on his property, Abstract 181 in the McFadden survey in Jefferson County, Texas. Plaintiff's suit is the most recent in a long line of suits asserting an interest in land around the famed Spindletop Dome from which billions of dollars worth of oil and gas have been produced. Plaintiff alleges that he acquired a ⅛ interest in Abstract 181 from Gordon Meador, grandson of James Meaders. Gordon Meador allegedly owned the property based on a chain of title including a deed from William McFadden's heirs to A.F. Lucas dated March 9, 1898, a deed from A.F. Lucas to Ephraim Garonzik dated January 12, 1907, and the deed from Ephraim Garonzik to James Meaders dated December 14, 1911 that was referred to in Judge Cobb's order. *See* Pl.'s Orig. Compl. at 2–3. This suit is barred by stare decisis, claim preclusion, and issue preclusion, based on the holding in *Robbins v. Amoco Production Co.* that the 1898 deed from McFadden's heirs to Lucas "does not supply a chain of title to Abstract No. 181. . . ." 952 F.2d 901, 905 (5th Cir.1992). A break in the chain of title is "fatal to [a] claim of ownership." *Id.* at 906. Because a claim for conversion under Texas law requires the plaintiff to establish ownership of the allegedly converted property, *see Barnett v. Barnett*, 985 S.W.2d 520, 534 (Tex.App.—Houston [1st Dist.] 1998, no pet.), this suit must be dismissed for failure to state a claim upon which relief can be granted.

## II. Standard for Rule 12(b)(6) Motion to Dismiss

■ FED.R.CIV.P. 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." On motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory"; or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). But the court also may "consider matters of which [it] may take judicial notice," *Lovelace*, 78 F.3d at 1017–18; FED. R.EVID. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990).

■ The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The well-pleaded facts must be reviewed in the light most favorable to the plaintiff. *See Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). "Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir.1986) (in the context of a dismissal based on claim preclusion) (citation omitted).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Kaiser*

*Aluminum,* 677 F.2d at 1050. " 'The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' " *Kaiser Aluminum,* 677 F.2d at 1050 (citation omitted).

### III. Discussion

██▌ When a federal court renders a decision in a diversity case, federal law determines the judgment's preclusive effect. *See RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995). The instant action is precluded by stare decisis, as well as the federal versions of claim preclusion and issue preclusion.

### A. Stare Decisis

▌ "Stare decisis is the doctrine that demands adherence to judicial precedents." *Meadows v. Chevron, U.S.A. Inc.,* 782 F.Supp. 1189, 1192 (E.D.Tex.1991). The doctrine requires that like facts be given like treatment in a court of law. *See Taylor v. Charter Medical Corp.,* 162 F.3d 827, 832 (5th Cir.1998) (citing *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369, 374 (5th Cir.1987)). The policy behind stare decisis is that "it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Hohn v. United States,* 524

U.S. 236, 251, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)). Stare decisis "applies *a fortiori* to enjoin lower courts to follow the decision of a higher court," *Hubbard v. United States,* 514 U.S. 695, 720, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) (Rehnquist, C.J., dissenting), and "applies with special force to decisions affecting title to land." *Meadows,* 782 F.Supp. at 1192. The Fifth Circuit determined as a matter of law in *Robbins* that the March 9, 1898 deed upon which Plaintiff relies conveyed an interest only in the properties listed in the inventory of William McFadden's estate and that the inventory did not include Abstract 181.[1] *See Robbins,* 952 F.2d at 905. Plaintiff does not claim that he can produce any new evidence showing that the estate included property other than the tracts listed in that inventory. Rather, Plaintiff attempts to establish a chain of title to Abstract 181 by merely relying on the same deeds relied on in *Robbins.* Because the material facts in this case are the same as those in *Robbins,* stare decisis dictates that the March 9, 1898 deed does not convey an interest in Abstract 181 and that Plaintiff's claim for conversion of the minerals under that tract must fail.

1. Plaintiff points out in his "Motion to Strike Defendant's Motion to Dismiss" that the Fifth Circuit's opinion in *Clark v. Amoco Production Co.* seems to indicate that Abstract 181 was included in the McFadden inventory. The holding of *Clark* was that the 1911 deed from Garonzik to Meaders conveyed an interest in only four tracts, Abstracts 166, 181, 182, and 183, and that the plaintiff in *Clark* had asserted his rights against the wrong defendants, who had never extracted oil from those four tracts. *See* 908 F.2d 29, 31–33 (5th Cir.1990). Thus, the effect of the 1898 deed was not a determinative issue in *Clark.* The effect of the 1898 deed was discussed only in a footnote where the court does, in fact, seem to imply that the 1898 deed conveyed Abstract 181:

> [Plaintiff's chain of title included] an 1898 agreement (which could be a lease or a deed) between Rachel McFadden and Lucas concerning mineral production on the lands contained in William McFadden's estate. The records of the McFadden estate, how-

ever, indicate that it did not contain three of the parcels—Abstracts 166, 182, and 183—specifically described in the 1911 deed.

*Clark,* 908 F.2d at 32 n. 8. While this statement could, by omission, indicate that the estate did include Abstract 181, the statement was strictly an aside upon which the court did not rely in reaching its decision. *See id.* at 33 n. 11. It is, thus, not binding precedent with regard to that issue, and conflicts with *Robbins v. Amoco,* a later case where the effect of the 1898 deed was analyzed as the dispositive issue, and which is binding on that issue. Nonetheless, because of the apparent conflict, the court has reviewed the inventory from the McFadden estate, as the court is allowed to do in considering a 12(b)(6) motion since that inventory is included in the public record of the *Robbins* case. The court's review confirmed that, in fact, the inventory lists Abstracts 166, 182, and 183, but not Abstract 181.

## B. Res Judicata

The federal law of res judicata encompasses claim preclusion (sometimes referred to as res judicata or "true" res judicata) and issue preclusion (sometimes called collateral estoppel). *See Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops,* 24 F.3d 743, 746 (5th Cir.1994); *Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc.,* 575 F.2d 530, 535–36 (5th Cir.1978). The doctrines both serve to prevent redundant litigation, *see Kaspar Wire Works,* 575 F.2d at 535–36, but they are designed for different circumstances. Claim preclusion bars a suit based on the same claim or cause of action as a prior suit. *See In Re Southmark Corp.,* 163 F.3d 925, 934 (5th Cir.1999). Issue preclusion, on the other hand, can be applied to bar the litigation of issues that have been decided in a prior suit based on a different cause of action, or when the cause of action is the same in both suits. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4418 (1981). Thus, both doctrines can apply to one suit where the subject matter is the same as that in a prior action. *See, e.g., Medina v. I.N.S.,* 993 F.2d 499, 503 n. 15

(5th Cir.1993) ("Although res judicata (or claim preclusion) governs the instant case, we note that collateral estoppel would lead us to the same result."); *Meadows,* 782 F.Supp. at 1193–94 (applying both issue preclusion and claim preclusion to the facts of that case). Because the instant case involves the same cause of action that formed the basis for *Robbins,* both claim preclusion and issue preclusion apply.

Claim preclusion requires four elements: 1) the same claim or cause of action must be involved in both actions 2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; 3) the prior action must have resulted in a final judgment on the merits (or, at least, there must have been an opportunity to get to the merits); and 4) the parties in both actions must be identical or in privity. *See Southmark,* 163 F.3d at 934; *Medina* 993 F.2d at 503 (regarding opportunity to get to the merits). Issue preclusion has only three elements:[2] 1) the issue at stake must be identical to the one involved in the prior action; 2) the issue must have been actually and fully litigated in the prior action;[3] and 3) the determination of that issue must have been a part of the judgment in the prior action.[4]

---

**2.** Some courts have added a fourth requirement that "there is no special circumstance that would make it unfair to apply the doctrine." *See, e.g., Winters v. Diamond Shamrock Chemical Company,* 149 F.3d 387, 391 (5th Cir.1998) (citation omitted); *Copeland, et al. v. Merrill Lynch & Co., et al.,* 47 F.3d 1415, 1422 (5th Cir.1995); *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994). All of these cases involved the use of offensive issue preclusion, and the fourth requirement arguably only applies to such cases. *See RecoverEdge,* 44 F.3d at 1290–91 n. 12. The instant case involves *defensive* issue preclusion. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (offensive collateral estoppel involves a plaintiff seeking to estop a defendant from litigating issues that the defendant previously litigated and lost; defensive collateral estoppel involves a defendant seeking to prevent a plaintiff from litigating issues that the plaintiff previously litigated and lost). Furthermore, the court notes that even if a fairness requirement applies, Plaintiff has not alleged any

special circumstance and the court has not independently identified one that would make the application of issue preclusion unfair.

**3.** In contrast, claim preclusion bars the litigation of claims that were actually litigated or that should have been raised in an earlier suit. *See Southmark,* 163 F.3d at 934.

**4.** In addition to the traditional elements, the Fifth Circuit requires the presence of certain other "safeguards" before issue preclusion can apply: 1) the facts and the legal standard used to assess them must be the same in both proceedings; 2) the quality or extensiveness of the procedure followed by the two courts must not be so different as to require a new determination of the issues; and 3) the issue at stake must have been critical, necessary, and integral to the prior judgment. *See Winters,* 149 F.3d at 391 n. 3. These additional safeguards pose no problem for the application of issue preclusion in the present case. The material facts, i.e., the conveyances relied upon in *Robbins* and the instant case, are

*See Southmark,* 163 F.3d at 932 (5th Cir. 1999).

■ All the requirements of claim preclusion and issue preclusion are satisfied in the present case. The grant of summary judgment in *Robbins* was a final judgment on the merits, specifically, based on the failure of the 1898 deed to supply an adequate link in the chain of title to Abstract 181. A summary judgment, such as the one in *Robbins,* that rests on the lack of any genuine issue of material fact going to the merits of a claim or defense is a final judgment on the merits. *See* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4444 (1981) (citing *Exhibitors Poster Exchange, Inc. v. National Screen Serv. Corp.,* 543 F.2d 1106 (5th Cir.1976). And it is undisputed that the district court and court of appeals had jurisdiction to render judgment in that case.

■ This suit is based upon the same claims and raises the same issues as *Robbins.* The Fifth Circuit follows the Restatement (Second) of Judgments, § 24, in determining whether two suits involve the same claim. *See Southmark,* 163 F.3d at 934. Thus, a claim or cause of action can be barred by claim preclusion if it is based on " 'the same nucleus of operative facts' " as a claim brought in a previous case. *Id.* (citation omitted). This case and *Robbins* are based on the same nucleus of operative facts, i.e., the March 9, 1898 conveyance of the tracts in the McFadden estate. The claim in both cases is the recovery of James Meader's interest in Abstract 181 and damages for minerals extracted from that tract. *Cf. Clark,* 794 F.2d at 973

(addressing a similar situation). Furthermore, the inadequacy of the 1898 deed as a link in the chain of title to Abstract 181 was clearly a part of the *Robbins* judgment as it regarded Abstract 181. In fact, it was the dispositive issue. The *Robbins* court held that the 1898 deed "does not supply a chain of title to Abstract No. 181 . . . ." *Robbins,* 952 F.2d at 905. Such a break in the chain of title is "fatal to [a] claim of ownership." *Id.* at 906. That issue was actually and fully litigated in the prior action before the district court, where Defendant Amoco Production Co. (now Oryx) was granted summary judgment,[5] and the court of appeals, which affirmed.[6]

■ Finally, there is sufficient identity of parties for claim preclusion and issue preclusion to apply to this case. Oryx, the party asserting a preclusion defense, was a party to *Robbins. See* 952 F.2d at 903 n. 1. Meador was not a party to *Robbins;* however, both claim and issue preclusion may be applied to non-parties who are considered to be in privity with the parties in the prior suit. *See Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops,* 24 F.3d 743, 746 (5th Cir.1994); *Meza v. General Battery Corp.,* 908 F.2d 1262, 1266 (5th Cir.1990); *Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir.1989). Privity merely "represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.1977).

identical. The legal standard used to assess them was the same in *Robbins* as in the instant case. *Robbins* was disposed of on summary judgment and this case involves a motion to dismiss for failure to state a claim. The facts which may be considered are different in those two proceedings, but the legal standard is the same, that is, the facts must be considered in the light most favorable to the non-movant. *See Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999) (stating the legal standard for summary judgment); *Piotrowski,* 51 F.3d at 514 (stating the legal standard for

a 12(b)(6) motion). Furthermore, adequate and extensive procedures of similar degree were employed in both proceedings, and the issue of the effect of the 1898 deed was critical, necessary, integral, and dispositive in *Robbins.*

5. *Robbins v. Amoco Production Co.,* No. B–85–251–CA (E.D.Tex.1989).

6. *Robbins v. Amoco Production Co.,* 952 F.2d 901 (5th Cir.1992).

The general federal rule regarding the use of issue or claim preclusion against a non-party states that there are three circumstances where privity exists: 1) where a non-party has succeeded to a party's interest in property, the non-party will be bound by a judgment against that party; 2) a nonparty who controlled the original suit will be bound by the resulting judgment; and 3) a non-party will be bound if his interests were represented adequately by a party in the original suit. *See Terrell,* 877 F.2d at 1270; *Southwest Airlines,* 546 F.2d at 95. The first and second circumstances are not present in the instant case, so privity will only exist if the *Robbins* plaintiffs adequately represented Plaintiff Meador's interests.

A non-party is adequately represented by a party in a prior suit whose interests were so closely aligned to her interests as to be her "virtual representative." *See Eubanks v. FDIC,* 977 F.2d 166, 170 (5th Cir.1992) (citing *Meza,* 908 F.2d at 1266). Virtual representation is a narrow doctrine. To establish the necessary alignment of interests, it is insufficient to show that the parties have parallel interests, that the first suit was competently litigated, or even that the same attorney was used in both suits. *See Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1175 (5th Cir.1987). Virtual representation requires an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit. *See Royal Insurance Co. of America v. Quinn–L Capital Corp.,* 960 F.2d 1286, 1297 (5th Cir.1992) (citing *Benson and Ford,* 833 F.2d at 1174–75). Whether such a legal relationship exists is a question of fact for the trial court. *Quinn–L,* 960 F.2d at 1297.

Plaintiff Meador was not a party to the *Robbins* case, however, the interests of Plaintiff Meador and the *Robbins* plaintiffs are sufficiently aligned for the *Robbins* plaintiffs to be considered Meador's virtual representatives. In both *Robbins* and the present case, the plaintiffs' claims derive solely from rights that allegedly belonged to James Meaders, and by extension, his descendants. In *Robbins,* the named plaintiff asserted that "she individually and as attorney-in-fact for some 200 heirs of James Meaders, own[ed] an undivided one-eighth mineral interest" in Abstract 181 and several other tracts of land. *Robbins,* 952 F.2d at 903. In the instant case, Plaintiff claims "an interest in the Wm. McFaddin Abstract 181 ..." based on the same deeds relied on in *Robbins,* in addition to a 1999 deed executed by Gordon Meador, the alleged grandson and heir of James Meaders. Pl.'s Orig. Compl. at 2–3. Thus, the claims asserted in *Robbins* and the instant case both derive from a claim belonging to James Meaders and involve the same conveyances interpreted conclusively in *Robbins.*

The Fifth Circuit has held that two family members' interests are sufficiently aligned to create privity when a claim asserted by one derives exclusively from the claim of the other. *See Eubanks,* 977 F.2d at 170. In *Eubanks,* a wife was held to be in privity with her husband, thus preventing her from filing claims that had already been asserted by her husband based on his interest in a partnership. *See id.* The instant case presents a slightly different situation, in that Plaintiff's claim does not derive from a claim belonging to the *Robbins* plaintiffs, rather, the claims in the present case and *Robbins* derive from a claim that belongs to the common ancestor of the plaintiffs in these cases. Nonetheless, if both Plaintiff and the *Robbins* plaintiffs are in privity with their common ancestor for a claim belonging to that ancestor, it follows that they are also in privity with each other regarding such a claim. Further support for this conclusion is found in *Chicago, R.I. & P. Ry. Co. v. Schendel,* where the U.S. Supreme Court held that an estate (represented by its administrator) and beneficiaries of that estate are in privity sufficient to constitute identity of parties. *See* 270 U.S. 611, 618, 46 S.Ct. 420, 70 L.Ed. 757 (1926); *see also Pollard v. Cockrell,* 578 F.2d 1002, 1008–09

(5th Cir.1978) (noting that the types of relationships contemplated by the virtual representation doctrine include: "estate beneficiaries bound by administrators ....") (citation omitted). Therefore, it seems apparent that Plaintiff, the *Robbins* plaintiffs, and all other alleged beneficiaries of James Meaders' estate should be regarded as in privity with the estate and with each other regarding claims of that estate that have been filed by purported representatives of that estate.[7]

 Plaintiff cites *Clark v. Amoco Production Co.*, 794 F.2d 967 (5th Cir.1986) in support of his contention that the identity of parties requirement has not been met in this case. *Clark* does not support Plaintiff's assertion. The *Clark* court held that there was not sufficient privity of parties for res judicata to bar a suit by the purported representatives of the Meaders estate because, although the same individuals had filed an earlier suit on the same claims, the plaintiffs had appeared in their individual capacities in the earlier suit. *See* 794 F.2d at 973. The instant case is distinguishable on several grounds.

To begin with, the present case involves something like the reverse of the situation in *Clark*. The representative plaintiff in *Robbins* sued individually and as the representative of the heirs of the Meaders estate, and the plaintiff in the instant case sues in his individual capacity. It is more reasonable to conclude in such a situation that the plaintiff in the earlier litigation was the virtual representative of the individual heirs, including Plaintiff Meador,

because the named plaintiff in *Robbins* sued in a representative capacity. The fact that a prior litigant attempted to assert the claim of others is a factor militating in favor of the existence of privity. *See Meza*, 908 F.2d at 1272 n. 10. Additionally, the *Clark* court concluded that the parties in the earlier suit were not adequate representatives based on the fact that the plaintiffs in the earlier suit "proceeded *pro se* and failed to appeal the dismissal of their case." *Clark*, 794 F.2d at 974. The representative plaintiff in *Robbins* was represented by a lawyer, *see Clark*, 794 F.2d at 974, and as noted earlier, fully litigated her case before the district court and court of appeals, both of which reached the same conclusion. Finally, the *Clark* decision, as it regarded the unnamed beneficiary plaintiffs, was based on the fact that there was no indication that the unnamed beneficiaries even knew about the earlier action. *See Clark*, 794 F.2d at 973–74. Here, there is every reason to charge Plaintiff with knowledge of the earlier suits. In the approximately twenty years since litigation over the Meaders estate began, it has consumed an enormous amount of time and resources with no finding of any rightful claim by the Meaders heirs.[8] Given the long history and the number of suits that have been filed, it seems reasonable to conclude that all heirs to James Meaders have had constructive notice of these suits and of the need to assert their rights. To hold now that every purported heir to this estate must have had actual notice of the litiga-

---

7. It should be noted that this court has found in a similar case that the representatives of the Meaders heirs in prior cases have adequately represented the interests of all potential heirs. *See Meadows*, 782 F.Supp. at 1193 ("The many previous James Meadors heirs, assignees of heirs and representatives who have pressed their claims over the years have more than adequately represented the plaintiff."), *aff'd*, 990 F.2d 626 (5th Cir.1993).

8. The reported cases involving such claims include *Robbins v. Amoco Production Co.*, 952 F.2d 901 (5th Cir.1992); *Robbins v. Chevron, U.S.A., Inc.*, 940 F.2d 1529 (5th Cir.1991);

*Clark v. Amoco Production Co.*, 908 F.2d 29 (5th Cir.1990); *Clark v. Amoco Production Co.*, 794 F.2d 967 (5th Cir.1986); *Robbins v. Amoco Production Co.*, 800 F.2d 1143 (5th Cir.1986); *Meadows v. Chevron, U.S.A., Inc.*, 782 F.Supp. 1189 (E.D.Tex.1991); *Robbins v. Amoco Production Co.*, No. B–85–251–CA (E.D.Tex.1989); *Allen v. Amoco Production Co.*, No. 85–CV–779 (E.D.Tex.1987); *Clark v. County and State Probate Courts of Jefferson County* (filed *pro se* by James Clark and Dan Profitt in 1982); and *Robbins v. HNG Oil Co.*, 878 S.W.2d 351 (Tex.App.—Beaumont 1994, writ dism'd w.o.j.).

tion for preclusion principles to apply would condemn the courts of the Eastern District to hear these repeated and baseless suits *ad infinitum.* Under these circumstances, the court finds that an implied legal relationship sufficient to constitute virtual representation exists. All of the elements for claim preclusion and issue preclusion being present, the court concludes that Plaintiff is bound by the judgment in *Robbins.*

### IV. Conclusion

Because Plaintiff's claim is based on a chain of title that is insufficient as a matter of law to establish title to Abstract 181, Plaintiff's suit for conversion of the minerals under that tract must be dismissed under Rule 12(b)(6). It is therefore ORDERED that this case is dismissed with prejudice.